SUPERIOR COURT
OF THE
STATE OF DELAWARE

CRAIG A. KARSNITZ
RESIDENT JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

January 10, 2025

Robert Piper
SBI# 00170365
SCI
P.O. Box 500
Georgetown, DE 19947

David Hume, IV, Esquire
Department of Justice
13 The Circle
Georgetown, DE 19947

RE: *Piper v. State*, Def. ID#s 2209003503, 2209003513, 2209003519,

2209006351

DATE SUBMITTED: December 23, 2024

Dear Mr. Piper and Mr. Hume:

Robert Piper ("Piper" or "appellant") has filed appeals from a violation of

probation proceeding that occurred in the Court of Common Pleas ("CCP") in these four

cases. This is my decision finding the appeals moot and alternatively, concluding

appellant's grounds of appeal have no merit.

1) Procedural Posture

On November 29, 2022, appellant pleaded guilty to shoplifting less than $1500

and was sentenced, in *State v. Piper*, Def. ID# 2209006351, to pay court costs and

assessments; be imprisoned for one year suspended for probation for nine months at

Level 3; and have no contact with any Weiss Markets or Lowes Stores. He was violated,

1

and on February 16, 2023, his probation was continued at Level 3 probation for eleven months with all previous conditions imposed.

On February 16, 2023, appellant pleaded guilty to shoplifting less than $1500 and was sentenced, in *State v. Piper*, Def. ID# 2209003503, to pay court costs and assessments; be imprisoned for one year suspended for probation for one year at Level 3 concurrent with other probation; and have no contact with any Food Lion or Roses stores.

On February 16, 2023, appellant pleaded guilty to shoplifting less than $1500 and was sentenced, in *State v. Piper*, Def. ID# 2209003513, to pay court costs and assessments; be imprisoned for one year suspended for probation for one year at Level 3 concurrent with other probation; and have no contact with any Food Lion or Roses stores.

On February 16, 2023, appellant pleaded guilty to shoplifting less than $1500 and was sentenced, in *State v. Piper*, Def. ID# 2209003519, to pay court costs and assessments; be imprisoned for one year suspended for probation for one year at Level 3 concurrent with other probation; and have no contact with any Food Lion or Roses stores.

Thereafter, a violation of probation report was submitted asserting appellant had violated his probation in all four cases for the following reasons:

1) He failed to report to probation on August 9, 2023;

2) On August 3, 2023, he went to Maryland without permission to leave Delaware;

3) His reported residence was in Millsboro, but he was staying in Crisfield, Maryland, and he failed to notify probation within 72 hours of his change of residence;

4) He is GPS-monitored (pursuant to a Superior Court sentence) and he allowed his GPS battery to die on August 9, 2023; and

2

5) He has a no contact condition with Food Lion, and he was visiting the one in Crisfield, Maryland daily before his GPS died.

Piper's violation of probation hearing in CCP took place on December 12, 2023. An attorney was not present. His supervising probation officer was not present at the hearing; however, that officer's partner, who was familiar with the case, stepped in during the hearing. The officer established that Piper was directed not to leave the State of Delaware. The Court went over the violation of probation allegations with Piper. Piper admitted that he went to Crisfield, Maryland and stayed there. He denied he was in the Food Lion; instead, according to him, he was at the bus stop in front of Food Lion. Piper also argued GPS should not be brought up in CCP because CCP did not sentence him to GPS monitoring. The Court found him in violation of the following conditions to which he admitted violating: leaving the State of Delaware and failing to report a change of address because he was staying in Crisfield, Maryland.

On each case, Piper was sentenced to 1 year at Level 5, suspended after 90 days, with no probation to follow. Thus, he was sentenced to a total of 360 days at Level 5 on these four sentences. Piper's last CCP sentence ended on December 3, 2024.

Appellant appealed his sentences to Superior Court. The Supreme Court later determined that this initial appeal paperwork mistakenly was docketed in Piper's pending Superior Court cases and not noticed to be an appeal of his CCP case. On March 6, 2024, after having heard nothing from Superior Court about his appeals, appellant filed, with Superior Court, a "Notice of Appeal" for the four cases. This "Notice of Appeal" came to the attention of the Superior Court. The Superior Court remained unaware of the previously-filed paperwork and considered only the March 6, 2024 paperwork.

Consequently, it dismissed the appeals as untimely. Piper appealed to the Supreme Court. The Supreme Court, as noted above, determined that Piper actually had filed a timely appeal and Superior Court should not have dismissed the appeals as untimely.[1] The Supreme Court remanded the matter to this Court to address the appeals.

On remand, a briefing schedule was ordered. Because the briefing schedule ran beyond appellant's sentence, the Court directed the parties to address the issue of mootness along with the merits of the case. The parties have completed their briefing. This is my decision on the appeals.

2) <u>Standard of Review</u>

As explained in *Johnson v. State*:[2]

The Superior Court sits as an intermediate court when reviewing appeals from the Court of Common Pleas, and its function mirrors that of the Supreme Court. The Court reviews questions of law *de novo*, but examines questions of fact to see if they are supported by sufficient evidence. Additionally, the Court reviews decisions on the admissibility of evidence for abuse of discretion. "An abuse of discretion occurs when the trial court has 'exceeded the bounds of reason in view of the circumstances' or 'so ignored recognized rules of law or practice so as to produce injustice.'" This Court's role is to "correct errors of law and to review the factual findings of the court below to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process." (Footnotes and citations omitted.)

Furthermore, as explained in *Steelman v. State*:[3]

A probation revocation requires that the proffered evidence reasonably assure the judge that the probationer's conduct violated the conditions of his or her probation. In order to affirm a probation revocation the reviewing court must be satisfied that the determination that a violation took place was supported by competent evidence. (Footnotes and citation omitted).

---

[1] *Piper v. State*, 2024 WL 3812719 (Del. Aug. 13, 2024).

[2] 2011 WL 2083907, *3 (Del. Super. May 4, 2011).

[3] 2000 WL 972663, * 1 (Del. Super. May 30, 2000).

4

3) <u>Summary of Arguments</u>

Appellant makes several arguments.

His basic argument is that his due process rights were violated under the 6th, 8th, and 14th Amendments to the United States Constitution.[4] Specifically, he advances the following in support of his contentions that his constitutional rights were violated:

[ ] The Movant asserts these violations because the day of the Movant's hearing he was under Medication for PTSD, and SMI[5] Mental health illnesses, and was not of an [sic] knowingly + intelligent state.

[ ] The Movant also asserts the violations because under the criminal code and statue [sic] the Movant has the right to counsel, and has a qualified right to confrontation in a revocation proceeding

---

[4]These Amendments state in pertinent part as follows:

6th Amendment:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

8th Amendment:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

14th Amendment:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[5]Appellant does not clarify for what "SMI" is an abbreviation. The Court speculates it could be an abbreviation for "serious mental illness."

5

[ ] All of the rights were taken because I never had representation of counsel nor signed any waiver, nor was I afforded the right to confront or cross-examine.

\*\*\*

[ ] The use of hearsay impermissibly violates a right to confront and cross-examine a declarant additional [sic] allowing hearsay testimony through another officer can be particularly damaging in light of an officer's perceived credibility.

[ ] The Movant states that his due process was violated because the Court new [sic] Movant wasn't represented by an attorney nor offered Movant an attorney and continued with the violation proceedings.

\*\*\*

[ ] The Movant states that the use of hearsay impermissibly violated his due process because the courts allowed Mr. O'Bair who wasn't their [sic] to represent Probation or Mr. Hopkins, but put it upon himself to step in just because he was in the gallery and heard my name.

[ ] Movant asserts his due process was violated because had appeal been heard then his grounds for the appeal would of had his sentencing overturned and his conviction negated.

Piper also addresses the mootness argument. He contends he would have been successful on his appeals. He asserts the following collateral consequences:

For the Movants [sic] violation of his due process of his 6th amendment he will have suffered and loss [sic] the liberty of his love ones.

The Movant will have lost his opportunity to watch his daughter mature into womanhood as a result of having his 6th 14th violated

The Movant will have suffered into mental depression, anxiety, and a rapid SMI state by having these rights and due process fringed [sic] upon

The Movant will have suffered a great injust [sic] in the judism [sic] and justice system for allowing these rights and due process to be violated when the matter could of been resolved at the beginning when first filed upon

The Movant will have suffered a violation of his 8th by having his rights infringed upon because of the daily mental and emotional abuse he has to endure at the hands of the D.O.C and all staff.

6

In his reply brief, Piper provides additional collateral consequences: loss of liberty, loss of employment, and loss of housing because he could not make payments while incarcerated. Piper does not attempt to explain how these collateral consequences are distinct from those resulting from the Superior Court Level 5 sentence imposed on September 22, 2023.[6]

In connection with this mootness argument, he asks for an award of monetary damages or a mediation in the matter.

In its Answering Brief, the State of Delaware ("the State") argues as follows.

Piper has served his sentence and has no collateral consequences that would be an exception to the mootness doctrine. He admitted violating his probation by leaving the State. His statements appear to be voluntary and knowing; thus, his claim the admission was not knowing and intelligent because he was under the influence fails. He did not request counsel and he has no constitutional right to counsel at a violation of probation hearing. Furthermore, because the issues were not substantial or complex, there was no requirement for the appointment of counsel. Because he admitted the violations, he was not deprived of the right to confront or cross-examine witnesses.

In his Reply Brief, Piper argues the following.

1) He was on psychotropic medications at the time of the hearing. He now has access to his medical records to support this assertion. Piper does not explain why he did not raise this issue at the time of the violation of probation hearing.

2) His case was complex because he was on psychotropic medications and consequently, counsel should have been appointed to represent him. He claims he did not

---

[6]*State v. Piper*, Def. ID#s 2301008437, 2301007516, and 2301005855.

raise the issue about having counsel present because the Court's records stated an attorney would be present.

3) He conclusively argues that if he had been appointed counsel, he would not have admitted anything and consequently, a hearing would have to have been held where he could have confronted the witnesses against him. He does not explain how, at a contested hearing, he would have been able to successfully overcome the facts that he left the State of Delaware and failed to notify his probation officer of his change of address.

4) <u>Discussion</u>

I will address the mootness argument first.

The general rule regarding mootness is set forth in *Gural v. State*:[7]

> [T]he satisfaction of the sentence renders the case moot unless, in consequence of the conviction or sentence, the defendant suffers collateral **legal** disabilities or burdens; in which event the defendant is considered to have a sufficient stake in the conviction or sentence to survive the satisfaction of the sentence and to permit him to obtain a review or institute a challenge.
>    \*\*\*
>    In view of the appellant's extensive prior criminal record, we find no merit in the general reasons he states to avoid mootness. The appellant bore the burden of demonstrating specifically a right lost or disability or burden imposed, by reason of the instant conviction, which had not already been lost or imposed by reason of his earlier convictions. (Emphasis added. Citations omitted.)

In addition, "collateral consequences ordinarily do not arise from misdemeanor convictions."[8]

---

[7]251 A.2d 344, 344-45 (Del. 1969). *Accord DeJohn v. State,* 216 A.3d 868, 2019 WL 3945644 (Del. Aug. 20, 2019) (Table); *Ross v. State*, 108 A.3d 1226, 2015 WL 410270 (Del. Jan. 28, 2015) (Table); *Paul v. State*, 26 A.3d 214, 2011 WL 3585623 (Del. Aug. 15, 2011) (Table); *Keita v. State*, 9 A.3d 476, 2010 WL 4970743 (Del. Dec. 7, 2010) (Table).

[8]*Harvey v. State*, 692 A.2d 412, 1996 WL 585912, \*2 (Del. Oct. 7, 1996) (Table).

In this case, appellant's criminal history is extensive. Among other convictions, he has convictions for felony robberies in the second degree, misdemeanor forgeries, misdemeanor thefts, and misdemeanor shopliftings. He has well over twenty convictions for shoplifting.

Appellant advances only personal consequences arising from his violation of probation findings. He has not advanced a single legal collateral consequence arising from those findings. Appellant has suffered no collateral consequences in this case and the appeals are moot. However, in this extremely limited circumstance, i.e., where the Supreme Court found the appeals were timely filed with the Superior Court, this Court will consider the merits of the appeals even though the appeals are moot.[9]

As explained in *Jenkins v. State*:[10]

> 7. ... [T]he United States Supreme Court has held that the Fourteenth Amendment is the constitutional provision that protects a probationer's constitutional rights at a VOP hearing. A VOP hearing is neither a criminal prosecution nor a formal trial and only minimal requirements of due process must be observed. ***
> 8. The Sixth Amendment, and the correlative rights contained in Article I, Section 7 of the Delaware Constitution, govern the rights of an accused in a criminal prosecution. Those rights include the right to assistance of counsel and the right to confront adverse witnesses.
> 9. By contrast, the Fourteenth Amendment has been held to govern the less formal process of a VOP hearing. The rules of evidence do not apply in a VOP hearing and a probationer is not entitled to the complete panoply of constitutional rights afforded a defendant during a criminal trial. Specifically, the United States Supreme Court's decision in *Gagnon v. Scarpelli* rejected the argument that a probationer or parolee has a Sixth Amendment right to counsel during a VOP hearing. The right to counsel during a VOP hearing stems instead from the Due Process Clause and must only be afforded in cases where arguments are complex or otherwise difficult to develop or to present. ***

---

[9] *See Sturgis v. State*, 2024 WL 4039694, *2 (Del. Sept. 3, 2024) (Supreme Court concluded the appeal was moot because defendant had served his sentence and then considered the merits of the appeal).

[10] 862 A.2d 386, 2004 WL 2743556, **2-3 (Del. Nov. 23, 2004) (Table).

9

\*\*\*

11. Applying the same logic, any right to confront witnesses during a VOP hearing would arise from the Fourteenth Amendment where applicable, rather than from the Sixth Amendment.... The Fourteenth Amendment, on the other hand, allows the admission of hearsay testimony when "fundamentally fair." \*\*\*

12. We conclude that the relevant federal and Delaware authorities establish that the Sixth Amendment does not apply to a VOP hearing. (Footnotes and citations omitted).

Piper's core argument is he was not competent because he was medicated for PTSD and SMI mental health issues. Merely being on psychotropic medications does not render a person incompetent.[11] Piper did not raise this issue before the CCP Judge. Had he done so, the CCP Judge could have further explored the matter on the record.[12] Thus, Piper waived the right to raise the issue. Alternatively, there is nothing in the record to support any contention that, at the hearing, he was not competent, was confused, or lacked understanding. In fact, the evidence established he was competent and clearly understood what was occurring. He argued that he had not been in the Food Lion but instead, had been at the bus stop outside of the Food Lion. He also argued that CCP could not consider the evidence from GPS because it had not put him on GPS as a part of his probation. Those arguments establish he was well aware of what was going on and for what he was being violated. This claim is of no merit.

This case was not complex. Piper left the State of Delaware without permission and was residing in Maryland. He admitted he did so. Piper did not offer any circumstances that would justify or mitigate the violation or require an attorney to be

---

[11] *See State v. Palmateer*, 2006 WL 2709396 (Del. Super. Sept. 20, 2006), *aff'd*, 918 A.2d 339, 2007 WL 37772 (Del. Jan. 5, 2007) (Table).

[12] *Cf. id.*

present for the hearing. Thus, there was no reason to appoint an attorney to represent Piper at his hearing.

Furthermore, there was no due process or hearsay violation in allowing the supervising Probation Officer's partner to testify regarding the allegations in the report.[13] This officer was familiar with Piper, his probation conditions, and the specific violations of those conditions.

In conclusion, Piper has failed to set forth any basis for appealing his violations of probation in these cases. No errors of law occurred.[14] He admitted he violated the conditions of his probation. He was found in violation. Competent evidence supports the determination that a violation of probation occurred.[15] Because his appeals have no merit, he has not suffered any harm or prejudice from the delay in these appeal proceedings.

5) Conclusion

For the foregoing reasons, appellant's appeals are DENIED.

IT IS SO ORDERED.

Very truly yours,


Craig A. Karsnitz

cc: Prothonotary's Office
    Court of Common Pleas, Clerk's Office

---

[13] *Santiago v. State*, 817 A.2d 805, 2003 WL 423320, * 2 (Del. Feb. 13, 2003) (Table).

[14] *Johnson v. State, supra.*

[15] *Steelman v. State, supra.*

11